UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| AMY C. STOKES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:15-00463 |
| | ) | Judge Sharp |
| TRANSTAR AUTOBODY | ) | |
| TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Defendant Transtar Autobody Technology, Inc. ("Transtar") has filed a Motion for Summary on Plaintiff Amy C. Stokes' claims of sex discrimination, retaliation, and harassment under Title VII, 42 U.S.C. § 2000e, and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-401, *et seq*. The Motion was filed on June 22, 2016, and no response in opposition has been filed, nor has Plaintiff sought an extension of time within which to respond.[1]

Under Rule 56(c) of the Federal Rules of Civil Procedure, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to the particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). "If a party fails to properly support an assertion

---

[1] Pursuant to the Initial Case Management Order, responses to dispositive motions were to "be filed within 28 days after the date the motion is filed, or June 29, 2016." (Docket No. 15 at 4).

1

of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Similarly, this Court's Local Rules provide that "[a]ny party opposing the motion for summary judgment must respond to each fact set forth by the movant, and that the "[f]ailure to respond to a moving party's statement of material facts . . . within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for purposes of summary judgment. L.R. 56.01(c), (g).

Here, Defendant filed a "Statement of Undisputed Material Facts" (Docket No. 22-2) that complies with both the federal and local rules governing summary judgment. Because Plaintiff has failed to respond, those facts are accepted as true.

## I. Factual Background

The relevant facts, which will be fleshed out where necessary for purposes of the legal analysis, are as follows:

Transtar is a provider of body shop solutions in the automotive aftermarket. Its product line includes plastic repair materials, adhesives, sealants and specialty coatings, compounds and glazes, clear coats, primers, UV curing products, polyurethane topcoats, universal products and additives, and accessories.

Plaintiff was the Territory Manager for West Tennessee and Central/West Kentucky from February 27, 2012 to March 7, 2014. Her primary responsibility was to market and sell Transtar products.

Plaintiff worked out of her home office, but was required to travel throughout her assigned territory and interact with customers and potential customers. Plaintiff was the liaison between Transtar and its distributors and customers.

Plaintiff entered into a Territory Manager's Agreement with Transtar in which she "agree[d] to conduct business in a manner consistent with all Company Policies." (Docket No. 23-7 at 1). Plaintiff also acknowledged that "[f]ailure to conform to this policy may lead to disciplinary action up to and including termination." (Id.).

In the fall of 2013, Plaintiff prepared a "marketing" calendar containing Transtar's name, which included suggestive and unprofessional photographs of her that were taken at a body shop. The calendar, which has been provided as an exhibit, also contained inappropriate subtitles. Here is the picture and caption for June 2014[2]:



---

[2] The background picture in the calendar does not have the white box over the woman's breasts.

And here is the the one for January 2014:



(Docket No. 23-3 at 2 & 12).

Plaintiff made at least 25 copies of the calendar and distributed it to Transtar customers. Among those receiving the calendar were six distributors and six body shops, including Transtar's largest chain customer. Transtar did not approve the calendar, nor was it aware of the calendar until after it had been distributed.

Upon learning of the calendar in early 2014, Tim Cornelius, Director of Human Resources and Technological Services, arranged to meet with Plaintiff at a regional sales meeting in Orlando, Florida. At the meeting, which Jeremy VanAlstyne, Vice President of Sales also attended, Plaintiff was told that the calendar was inappropriate and that the calendar was not how Transtar wanted to portray itself to its customers.

Plaintiff was instructed to retrieve the calendars, and at some point reported back that she had done so. She was subsequently terminated.

## II. Application of Law

The Court cannot grant Defendant's Motion for Summary Judgment solely on the ground that Plaintiff failed to respond. Rather, and "[e]ven if local rules require a non-moving party to respond to a motion within a certain time, the Federal Rules of Civil Procedure still require the moving party to demonstrate the absence of a disputed question of material fact and a ground that would entitle the moving party to judgment as a matter of law." Miller v. Shore Fin. Servs., Inc., 141 F. App'x 417, 419 (6th Cir. 2005) (citing, Stough v. Mayville Cmty. Sch., 138 F.3d 612, 614 (6th Cir. 1998); Carver v. Bunch, 946 F.2d 451, 455 (6th Cir. 1991)). "When a non-moving party fails to respond, therefore, the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." Id. Here, Defendant has more than discharged its initial burden with respect to all of Plaintiff's claims.

As noted at the outset, Plaintiff brings discrimination, retaliation and harassment claims under both Title VII and the THRA. Because "[t]he intent of the THRA is to provide for execution within Tennessee of the policies embodied in the federal civil rights statutes," Lynch v. City of Jellico, 205 S.W.3d 384, 399 (Tenn. 2006), "THRA claims are analyzed in the same manner as claims brought under Title VII of the Civil Rights Act of 1964," Marpaka v. Hefner, 289 S.W.3d 308, 313 (Tenn. Ct. App. 2008) (collecting cases).

### A. Sex Discrimination

In the absence of direct evidence, Plaintiff's sex discrimination claim is subject to analysis under the familiar McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) burden-shifting framework. Plaintiff is required to establish a *prima facie* case by showing "(1) that [s]he is a member of a protected class, (2) that [s]he was subject to an adverse employment decision, (3) that [s]he was qualified for the position, and (4) that [s]he was treated differently than a similarly situated

individual outside the protected class." Vickers v. Fairfield Med. Ctr., 453 F.3d 757, 762 (6th Cir. 2006). "After a plaintiff creates a presumption of discrimination by establishing a *prima facie* case, a defendant may rebut the presumption by proffering a legitimate, nondiscriminatory reason for its decision." Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000). If the employer carries its burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were pretextual. Id. Although the burden of production shifts under the McDonnell Douglas paradigm, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." DiCarlo v. Potter, 358 F.3d 408, 415 (6th Cir. 2004) (internal citation omitted).

Plaintiff's discrimination claim fails because she has not established the fourth element, *i.e.*, that a comparable employee was treated differently. In Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992), the Sixth Circuit wrote that "to be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." However, that language in Mitchell should not be read too broadly because later, in Ercegpvoch v. Goodyear Tire & Rubber Co., 154 F.3d 344 (6th Cir. 1998), the Sixth Circuit observed that Mitchell allows for "different circumstances," and, therefore, courts "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." Id. at 352.

For a comparator to be similarly situated, then, "an exact correlation is not required by the law of this circuit." Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d 405, 412 (6th Cir. 2008). Rather, the Sixth Circuit has "held that to be found similarly situated, the plaintiff and his proposed

6

comparator must have engaged in acts of 'comparable seriousness.'" Wright v. Murray Guard, Inc., 455 F.3d 702, 710 (6th Cir. 2006).

Plaintiff has not shown that a comparable employee was treated differently. In her deposition, she likened her calendar to that produced by Rob Brunner, a male co-worker who also created a calendar. Brunner's calendar was simply titled "Road Warriors," and contained pictures of cars for each month of the year. For example, this is what his January 2014 calendar looked like:



(Docket No. 23-5 at 5). Not only was Brunner's handiwork vastly different from Plaintiff's, it was approved in advance by Transtar.

Even if Plaintiff could establish a prima facie case, Defendant has advanced a legitimate, non-

discriminatory reason for its decision – the unprofessional calendar that Plaintiff unilaterally decided to send clients and customers. Plaintiff has forwarded nothing which would suggest that this reason "(1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action," White v. Baxter Healthcare Corp., 533 F.3d 381, 391 (6th Cir. 2008), such that it could be considered pretextual.[3]

**B. Retaliation**

Section 704(a) of Title VII makes it "an unlawful employment practice of an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Similarly, the THRA makes it "a discriminatory practice" for an employer to "[r]etaliate or discriminate in any manner against a person because such person has opposed a practice declared discriminatory by [the THRA] or because such person has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding or hearing under [the THRA]." Tenn. Code Ann. § 4-21-301.

"To state a prima facie claim of retaliation under Title VII or the THRA, a plaintiff must show that (1) [s]he engaged in conduct protected by Title VII [or THRA]; (2) h[er] protected conduct was known to the defendant; (3) the defendant thereafter took an adverse action against the plaintiff; and (4) a causal connection linked the protected activity and the adverse action." Davis v. City of Clarksville, 2012 WL 2866680 at *8 (6th Cir. July 13, 2012) (citing Arendale v. City of Memphis, 519

---

[3] In her deposition, Plaintiff suggested that younger employees might have been treated more favorably. However, an age discrimination claim is not properly pled in the Complaint. Even if it was, it would fail for the same reasons just mentioned, and also because she has not shown "that age was the 'but-for' cause of the challenged employer decision." Gross v. FBL Financial Servs., Inc., 557 U.S. 167, 178 (2009).

8

F.3d 587, 606 (6th Cir.2008)).

In this case, the precise basis for Plaintiff's retaliation claim is unclear. In her Complaint she alleges that she was notified by Mr. Cornelius that Transtar would offer her four weeks of severance pay, but that Transtar reneged on the deal after her attorney contacted Defendant regarding her termination. However, Plaintiff admitted in her deposition that she was not entitled to severance pay by virtue of a contract or some other promise. She also admitted to cancelling the meeting that was scheduled to discuss the separation package because she "didn't feel comfortable meeting" Mr. Cornelius alone, and acknowledged that her attorney cancelled the meeting that he was to have with Mr. Cornelius on her behalf. In her deposition, Plaintiff also claimed that she was not reimbursed approximately $1,000 for car expenses, but has offered nothing to rebut Defendant's assertion that those expenses were turned in after separation and were found not to be appropriate. In short, Plaintiff has failed to establish a causal connection between protected activity and an adverse action.

## C. Harassment/Hostile Work Environment

To establish a hostile work environment, plaintiff must show (1) protected class status; (2) unwelcome harassment; (3) harassment based upon membership in a protected class; (4) an intimidating, hostile or offensive work environment because of the harassment; and (5) employer liability. Clay v. United Parcel Serv., Inc., 501 F.3d 695, 701 (6th Cir. 2007). Once again, Plaintiff's case flounders on the fourth element.

While "Title VII comes into play before the harassing conduct leads to a nervous breakdown." Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993), general angst will not do. Rather, Plaintiff "must present evidence showing that under the 'totality of the circumstances' the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Clay, 501 F.3d at 707 (citation omitted).

9

In determining whether Plaintiff has satisfied the "severe or pervasive requirement," the Court looks at the "totality of the circumstances," and considers "'the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance.'" Id. (quoting, Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 733 (6th Cir.2006)). "Both an objective and subjective test must be met: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." Bowman v. Shawnee State Univ., 220 F.3d 456, 463 (6th Cir. 2000).

Here, Plaintiff was employed for more than two years but, in her deposition, she identified only a handful of occasions when she said offensive comments were allegedly made. She claims that at a training event in Britton, Michigan, she was "exposed to comments that made [her] feel very uncomfortable," (Docket No. 23-1, Pf. Depo. 14), but does not offer the specifics. She also claims that, during a van ride to a sales event in New Orleans, Mark Johnson, a fellow Territory Sales Manager, mentioned something about employees providing prostitutes for Transtar customers, and claimed that she heard other make similar comments as well, although she does not recall who made the comments, or even what the actual comments were. At the sales dinner in Orlando after Plaintiff had been told her calendar was inappropriate, she claims that Angel Rosario, the Territory Manager for Florida, made "sex-base comments, innuendos," (PF. Depo. 23-1 at 28), but does not recall what was said, other than that Rosario insinuated Plaintiff used sex to make sales for Transtar. She also claims that Mr. Brunner and Mr. VanAlstyne made comments about the inappropriateness of her calendar and likewise insinuated that she used sex to sell product, but does not recall their specific comments either. Finally, she claims that, during the same dinner, Cornelius asked her if she liked massages, and "implied something offensive" when he talked to her about the calendar. (Id. at 34).

Plaintiff's allegations of inappropriate or sex-based comments and conduct fall far short of the severe and pervasive standard necessary to constitute a hostile work environment. The comments allegedly made were infrequent and isolated, none were severe or threatening, no offensive touching occurred, and she presents nothing to suggest continual and commonplace behavior indicative of an objectively hostile workplace. Moreover, Plaintiff never told Mr. Cornelius or Mr. VanAlstyne that she though their comments were inappropriate, or utilized the company's complaint procedure to complain about allegedly offense comments by her co-workers. See Smith v. Rock-Tenn Servs., Inc., 813 F.3d 298, 311 (6th Cir. 2016) (citation omitted) ("To impose liability on an employer for the harassing conduct of a plaintiff's co-worker, a 'plaintiff must show that the employer's response to the plaintiff's complaints manifest[ed] indifference or unreasonableness in light of the facts the employer knew or should have known.'").

### III. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment will be granted and Plaintiff's claims will be dismissed. An appropriate Order will enter.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE